IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LJUMNIE BALAZHI and SHAZIMAN BALAZHI, for himself and on behalf of his Minor Child, A.B.,[1]<br><br>Plaintiffs,<br><br>v.<br><br>ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>Defendant. | Case No. 3:19-cv-00241-JMK<br><br>**ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOCKET 117)** |

This matter comes before the Court on Defendant Allstate Property and Casualty Insurance Company's motion for partial summary judgment at Docket 117. Plaintiffs responded in opposition at Docket 132, and Allstate replied at Docket 136. At Allstate's request, the Court heard oral arguments.[2] The motion is now ripe for decision. For the reasons described herein, the Court will grant the motion.

---

[1] Shaziman Balazhi died on March 10, 2022, and Plaintiffs filed notice of his death on March 21. Docket 140. At oral argument, Plaintiffs' counsel indicated that a substitution for Mr. Balazhi will be forthcoming once arrangements for his estate are made. The Court reminds the parties of the provisions of Rule 25(a) of the Federal Rules of Civil Procedure.

[2] Docket 149 (Minute Entry).

## I. BACKGROUND

On the evening of December 9, 2017, Plaintiff Shaziman Balazhi and his minor son A.B. were driving to Ted Stevens Anchorage International Airport when a car pulled out into an intersection they were crossing and crashed into them.[3] Mr. Balazhi and A.B. went to a local hospital for evaluation and treatment of injuries. They were released later that evening.

Both Mr. Balazhi and the driver of the other car had automotive insurance policies from Allstate. Their policies each provided $100,000 of liability coverage per person, and Mr. Balazhi's policy provided $250,000 of underinsured motorist (UIM) coverage. After the crash, Mr. Balazhi submitted claims to Allstate for his car's physical damage and for his and A.B.'s medical expenses. Allstate agreed with Mr. Balazhi that the other driver was entirely at fault for the crash,[4] and it resolved his physical damage claim by February 2018. Mr. Balazhi and A.B. continued to receive treatment over the next several months, and Allstate paid their medical bills.

In October 2018, Plaintiffs made a policy limits demand against the other driver. Then, asserting that the ongoing nature of their injuries from the crash exceeded their combined coverage under Mr. Balazhi's and the other driver's liability policies, Plaintiffs submitted a UIM claim to Allstate under Mr. Balazhi's policy. Allstate denied Plaintiffs' UIM claim, concluding that Mr. Balazhi's and A.B.'s medical expenses had not

---

[3] Plaintiff Ljumnie Balazhi, who is Mr. Balazhi's wife and the mother of A.B., was not in the car at the time of the accident.
[4] Docket 117-21 (Ex. S).

*Balazhi, et al. v. Allstate Prop. & Cas. Ins. Co.*     Case No. 3:19-cv-00241-JMK
Order on Defendant's Motion for Partial Summary Judgment     Page 2
Case 3:19-cv-00241-JMK   Document 159   Filed 05/16/22   Page 2 of 14

yet exhausted their underlying liability coverage and that their general damages did not exceed the underlying policy limits. Plaintiffs submitted additional medical expenses in July 2019, but Allstate concluded that Plaintiffs' UIM claims still had no value. On July 31, 2019, Plaintiffs initiated the present suit.

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure allows parties to move for summary judgment on their claims or defenses or any parts thereof.[5] District courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] "An issue of fact is 'material' if it 'might affect the outcome of the suit under the governing law,'" and "[a] dispute is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'"[7] A party may offer evidence to support or dispute facts only if the evidence "could be presented in an admissible form at trial,"[8] and the court "must view the evidence 'in the light most favorable to the [nonmoving] party.'"[9]

To make its initial showing, a moving party that does not have the ultimate burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have

---

[5] Fed. R. Civ. P. 56(a).
[6] Id.
[7] S. Cal. Darts Ass'n v. Zaffina, 762 F.3d 921, 925 (9th Cir. 2014) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).
[8] Id. at 925–26 (quoting Fraser v. Goodale, 342 F.3d 1032, 1036–37 (9th Cir. 2003)).
[9] Tolan v. Cotton, 572 U.S. 650, 657 (2014) (quoting Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970)).

*Balazhi, et al. v. Allstate Prop. & Cas. Ins. Co.*  Case No. 3:19-cv-00241-JMK
Order on Defendant's Motion for Partial Summary Judgment  Page 3
Case 3:19-cv-00241-JMK   Document 159   Filed 05/16/22   Page 3 of 14

enough evidence of an essential element to carry its ultimate burden at trial."[10] If it succeeds, the nonmoving party must then "go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial."[11] If the nonmoving party does, it defeats the motion for summary judgment; if it does not, the moving party wins the motion.[12]

### III. DISCUSSION

Allstate seeks partial summary judgment in its favor on the issue of bad faith tort liability. It asserts that Alaska law imposes bad faith tort liability on insurers only when the insurers' actions were both objectively unreasonable and made in subjective bad faith. Its motion extensively catalogs its handling of the Balazhis' UIM claims, arguing that "overwhelming evidence" establishes that it "consistently acted both reasonably and in good faith in evaluating and handling plaintiffs' claims."[13]

Plaintiffs maintain that summary judgment on Allstate's bad faith tort liability is not warranted. They primarily rely on the declaration of expert witness Frank Zeigon, which they argue raises genuine disputes of material fact regarding the reasonableness of Allstate's actions that preclude summary judgment.[14] They also recite ongoing and future medical expenses they expect to incur, which they assert supports their claims for general claims exceeding the liability policies' limits.[15]

---

[10] *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).
[11] *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).
[12] *Nissan Fire*, 210 F.3d at 1103.
[13] Docket 117-1 at 2.
[14] Docket 132 at 18–19.
[15] *Id.* at 12–16.

*Balazhi, et al. v. Allstate Prop. & Cas. Ins. Co.*　　　　　　　　　　　　　　　　　　　　　　　Case No. 3:19-cv-00241-JMK
Order on Defendant's Motion for Partial Summary Judgment　　　　　　　　　　　　　　　　　Page 4
Case 3:19-cv-00241-JMK　　Document 159　　Filed 05/16/22　　Page 4 of 14

Alaska law recognizes the tort of bad faith for breach of the implied covenant of good faith and fair dealing in an insurance contract.[16] The Alaska Supreme Court has repeatedly declined to comprehensively define the tort's elements.[17] At a minimum, the tort requires an insurer's actions to have been "objectively unreasonable under the circumstances."[18] But "[w]hether the insured must *also* show some sort of culpable mental state in addition to objective unreasonableness . . . is a matter left open by [Alaska] case law."[19]

Alaska courts have found insurer actions such as making a settlement offer significantly below the damages estimate and ultimate outcome[20] and wrongfully denying an underinsured motorist (UIM) claim under a policy approved by the Alaska Division of Insurance[21] sufficient to support bad faith tort liability. And the Alaska Supreme Court has held an insurer's actions to have presented a genuine issue of material fact sufficient to survive summary judgment—albeit under Alaska's more lenient summary judgment standard—where the insurer delayed payment on a UIM claim by taking actions such as making a settlement offer that did not consider ongoing medical expenses and non-economic damages, demanded a total settlement solely because the policy's medical benefits have been exhausted, and denied payment solely on unsubstantiated doubts about

---

[16] *State Farm Fire & Cas. Co. v. Nicholson*, 777 P.2d 1152, 1156 (Alaska 1989).
[17] *Lockwood v. Geico Gen. Ins. Co.*, 323 P.3d 691, 697 & n.20 (Alaska 2014); *Hillman v. Nationwide Mut. Fire Ins. Co.*, 855 P.2d 1321, 1323 (Alaska 1993).
[18] *Lockwood*, 323 P.3d at 697–98; *see also Ennen v. Integon Indem. Corp.*, 268 P.3d 277, 287 (Alaska 2012) (quoting *Hillman*, 855 P.2d at 1324) ("[T]he tort of bad faith 'requires that the insurance company's refusal to honor a claim be made without a reasonable basis.'").
[19] *Lockwood*, 323 P.3d at 697 n.21 (emphasis in original).
[20] *State Farm Mut. Auto. Ins. Co. v. Weiford*, 831 P.2d 1264, 1267–68 (Alaska 1992).
[21] *Ennen*, 268 P.3d at 287–88.

*Balazhi, et al. v. Allstate Prop. & Cas. Ins. Co.*     Case No. 3:19-cv-00241-JMK
Order on Defendant's Motion for Partial Summary Judgment     Page 5
Case 3:19-cv-00241-JMK    Document 159    Filed 05/16/22    Page 5 of 14

the necessity of further medical care.²² Conversely, Alaska courts have found no factual basis for a bad faith claim where an insurer denies coverage based on an explicit exclusion in a policy, even though the policy's validity was unclear.²³

In this case, the Court concludes that Allstate is entitled to partial summary judgment on the issue of bad faith tort liability. Allstate's memorandum extensively catalogs its actions between October 2018, when Plaintiffs made their UIM claim, and July 2019, when Plaintiffs filed the present suit. In its memorandum, Allstate points to evidence of the objective reasonableness of their actions and negates an essential elements of Plaintiffs' bad faith tort claim.²⁴ The evidence establishes the following:

Allstate acknowledged receipt of Plaintiffs' UIM claim and assigned it to an adjuster within a week of receiving it. Plaintiffs submitted the claim on October 16, 2018;²⁵ Allstate recorded Plaintiffs' UIM claim in the claim diary on October 22, and assigned it to an adjuster the next day.²⁶ Allstate sent Plaintiffs a damages questionnaire on October 26, which Plaintiffs apparently never returned.²⁷

---

²² *Lockwood*, 323 P.3d at 698–99.
²³ *Hillman*, 855 P.2d at 1325–26.
²⁴ The Court concludes that it can consider the evidence Allstate offers in support of its motion because the contents of each document could be presented in an admissible form at trial. *Fraser*, 342 F.3d at 1036. The claim diary's contents likely could be presented directly under the business records exception, Fed. R. Evid. 803(6), or through the live testimony of the adjusters who made the entries. The contents of Allstate's correspondence with Plaintiffs also could be presented through the live testimony of its individual authors. The contents of Plaintiffs' medical records also could be presented at trial through live testimony by appropriate witnesses or, alternatively, under the business records or medical examination hearsay exceptions.
²⁵ Docket 117-22 (Ex. T).
²⁶ Docket 117-19 at 11–12 (Ex. Q).
²⁷ Docket 117-24 at 1 (Ex. V).

*Balazhi, et al. v. Allstate Prop. & Cas. Ins. Co.*　　　　　　　　　　　　　　　Case No. 3:19-cv-00241-JMK
Order on Defendant's Motion for Partial Summary Judgment　　　　　　　　　　　　Page 6
Case 3:19-cv-00241-JMK    Document 159    Filed 05/16/22    Page 6 of 14

On January 10, 2019, Plaintiffs' counsel asked Allstate for consent to settle Plaintiffs' claims against the other driver for her liability policy's limits. Allstate consented to the settlement the next day, reserving the right to offset medical benefits against the UIM claim.[28] On January 23, Plaintiffs told Allstate, apparently incorrectly,[29] that their underlying bodily-injury claims against Lind had been settled, and they demanded Allstate review and respond to their UIM claim as soon as possible.[30] Allstate agreed to respond within 30 days.[31]

On February 7, fifteen days later, Allstate responded to Plaintiffs' demand.[32] Allstate listed Mr. Balazhi's and A.B.'s medical expenses to that point and estimated their general damages to be $60,000 and $91,400, respectively. Because its estimates of their general damages were below the $100,000 of liability coverage they had under the other driver's policy, and because their medical expenses were offset by the corresponding Automobile Medical Payment ("MedPay") payments it had made, Allstate concluded that Plaintiffs' UIM claims had no value.[33] Allstate invited Plaintiffs to submit additional information as it became available for reevaluation of their UIM claim.[34]

In March 2019, Plaintiffs inquired whether Allstate would require them to arbitrate a dispute over the UIM claim. Allstate responded that they would allow

---

[28] Docket 117-19 at 10.
[29] *See id.* at 8 ("PA explained [on February 7] they have not settled the BI yet.").
[30] *Id.* at 9.
[31] *Id.*
[32] *Id.* at 7–8.
[33] *Id.* at 5–6 (in writing), 7–8 (on phone).
[34] *Id.*

*Balazhi, et al. v. Allstate Prop. & Cas. Ins. Co.* Case No. 3:19-cv-00241-JMK
Order on Defendant's Motion for Partial Summary Judgment Page 7
Case 3:19-cv-00241-JMK   Document 159   Filed 05/16/22   Page 7 of 14

arbitration or a lawsuit at Plaintiffs' preference.[35] On July 5, 2019, after four months elapsed without any developments, Allstate informed Plaintiffs that it would close their UIM claim for non-pursuit unless they provided new information within 30 days.[36] On July 10, Plaintiffs informed Allstate that they had new additional medical information.[37] Allstate asserts that its adjuster reviewed new information against the underlying liability policy limits and "still felt that the UIM claims had no additional value."[38]

In the Court's view, Allstate's evidence demonstrates that its handling of Plaintiffs' UIM claim was objectively reasonable. Allstate's quick responses to Plaintiffs' claim and their subsequent communications and its assessment of all the information Plaintiffs submitted to it belie Plaintiffs' assertion that Allstate "fail[ed] to conduct a prompt, reasonable and diligent investigation" of their UIM claim.

Moreover, the evidence demonstrates that Allstate had a reasonable basis for concluding Plaintiffs' UIM claim had no value. First, both the Alaska UIM insurance statute and the parties' insurance contract provided that Allstate would offset Plaintiffs' medical expenses against their MedPay payments when evaluating any UIM claim.[39] Second, the Alaska UIM coverage statute provides that UIM insurance cannot be drawn until "the limits of liability of all bodily injury and property damage liability bonds and policies that apply have been used up by payments, judgments or settlements."[40] Under

---

[35] Docket 117-19 at 3.
[36] Docket 117-28 (Ex. Z).
[37] Docket 117-19 at 2.
[38] Docket 117-1 at 19.
[39] *See* Alaska Stat. § 28.20.445(b); Docket 117-5 at 42, ¶ 4 (Ex. C).
[40] Alaska Stat. § 28.20.445(e)(1).

*Balazhi, et al. v. Allstate Prop. & Cas. Ins. Co.* Case No. 3:19-cv-00241-JMK
Order on Defendant's Motion for Partial Summary Judgment Page 8
Case 3:19-cv-00241-JMK Document 159 Filed 05/16/22 Page 8 of 14

this "excess coverage" approach, an insured must exhaust underlying liability policy limits before he or she can pursue UIM benefits.[41] The evidence establishes that Allstate's estimate of Plaintiffs' general damages was based on an evaluation of the crash itself and Plaintiffs' medical records, which showed that much of their medical complaints were subjective and/or speculative in nature. Consequently, because Allstate had a reasonable basis for its offsets and its general damages estimates, it had a reasonable basis to conclude that Plaintiffs' UIM claim had no value. Because Allstate had a reasonable basis for concluding that Plaintiffs' UIM claim had no value, it necessarily had a reasonable basis for refusing to accept Plaintiffs' settlement offer of the full UIM policy limits.

The testimony of Allstate's expert witness Roger Holmes further supports Allstate's case.[42] Holmes's testimony, which could be presented in an admissible form at trial,[43] was that "nothing about [Allstate's handling of] this claim . . . jumped out at me as being outside the parameters of what any reasonable person would have done under the circumstances."[44] Holmes concluded that, in his expert opinion, Allstate did "a reasonable investigation" into Plaintiffs' claims between the time Plaintiffs first made their claim and the time they filed the present suit.[45] Holmes agreed with Allstate that "there was insufficient evidence to substantiate any claim that either of [Mr. Balazhi's or A.B.'s]

---

[41] *Sidney v. Allstate Ins. Co.*, 187 P.3d 443, 448 (Alaska 2008).

[42] At Docket 128, Allstate moved to supplement its partial summary judgment motion with Holmes's deposition testimony. Plaintiffs neither filed an opposition to Allstate's motion to supplement nor addressed it in their opposition memorandum. The Court will grant the motion to supplement.

[43] At Docket 133, Plaintiffs filed a motion *in limine* seeking to exclude Holmes's expert testimony. The Court denied that motion in an order issued simultaneously with the present order.

[44] Docket 128-2 at 5.

[45] *Id.* at 11–12.

*Balazhi, et al. v. Allstate Prop. & Cas. Ins. Co.*                                                    Case No. 3:19-cv-00241-JMK
Order on Defendant's Motion for Partial Summary Judgment            Page 9

Case 3:19-cv-00241-JMK    Document 159    Filed 05/16/22    Page 9 of 14

claims exceeded 200,000 [dollars]."[46] Regarding Plaintiffs' allegations that Allstate acted in bad faith by failing to arrange for Mr. Balazhi and A.B. to undergo an independent medical examination, Holmes testified that, "in 52 years, I probably have been involved in 2,500 claims . . . . [B]ut I can't think of [a single case] that I've handled over the years where a competent, qualified insurance adjuster needed, or thought he or she needed, a medical or psychological evaluation in order to adjust a claim."[47]

In the Court's judgment, the evidence Allstate has presented demonstrates that it had a reasonable basis for its actions in handling Plaintiffs' UIM claim. It therefore has negated the essential element of Plaintiffs' bad faith tort claim. This shifts the burden to Plaintiffs to "set forth specific facts" that show a genuine issue for trial.[48] After considering their opposition and the accompanying evidence, the Court concludes that Plaintiffs have not done so.

First, although Plaintiffs' opposition recites the contents of Mr. Balazhi's and A.B.'s medical records at great length, most of these facts are irrelevant to Plaintiffs' bad faith tort claim. The referenced records span a period from December 2017 to January 2022.[49] But Plaintiffs filed this suit in July 2019. They have not amended their Complaint to include any subsequent actions by Allstate. Therefore, Allstate's post-July 2019 actions are not at issue in this litigation, and any medical records or other evidence from that period cannot be relevant to Plaintiffs' bad faith allegations.

---

[46] *Id.* at 14.
[47] *Id.* at 9–10.
[48] *Leisek*, 278 F.3d at 898 (quoting *Celotex*, 477 U.S. at 323–24).
[49] Docket 132 at 8–15.

*Balazhi, et al. v. Allstate Prop. & Cas. Ins. Co.*  Case No. 3:19-cv-00241-JMK
Order on Defendant's Motion for Partial Summary Judgment  Page 10
Case 3:19-cv-00241-JMK   Document 159   Filed 05/16/22   Page 10 of 14

The medical records from the period between October 2018, when Plaintiffs made their UIM claim, and July 2019, when Allstate reaffirmed its denial of their claim, are most likely to be probative of Plaintiffs' bad faith allegation. But Plaintiffs have not set forth any specific facts from that period demonstrating that Allstate's handling of their UIM claim lacked a reasonable basis. Plaintiffs note only that A.B. "receive[d] pain management treatment" and consulted several doctors about a potential shoulder surgery.[50] But as described above, Allstate paid these medical bills through MedPay benefits, and the speculative nature of A.B.'s potential shoulder surgery gave Allstate a reasonable basis to exclude it from its calculation of general damages.

The same is true of the medical records from before October 2018 that Plaintiffs reference. Allstate has demonstrated that it considered these records in its initial determination that Plaintiffs' UIM claims had no value. Conversely, Plaintiffs have not set forth any specific facts showing that a genuine issue regarding the objective reasonability of Allstate's determination. Although Plaintiffs assert that "[e]vidence at trial will show" that they have ongoing psychological issues, Plaintiffs do not point to any specific facts demonstrating the existence of any genuine issue for trial regarding Allstate's bad faith.[51] Thus, Plaintiffs' references to Mr. Balazhi's and A.B.'s medical records fail to set forth any genuine issue for trial.

---

[50] *Id.* at 12.

[51] Even if they had, Plaintiffs support this assertion only with their own self-serving affidavits. Such affidavits are, by virtue of their lack of supporting evidence, insufficient to create a genuine issue of material fact. *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

*Balazhi, et al. v. Allstate Prop. & Cas. Ins. Co.*  Case No. 3:19-cv-00241-JMK
Order on Defendant's Motion for Partial Summary Judgment  Page 11
Case 3:19-cv-00241-JMK   Document 159   Filed 05/16/22   Page 11 of 14

Besides their medical treatment records, Plaintiffs also offer the declaration of insurance expert Frank Zeigon to support the existence of a genuine dispute of material fact regarding Allstate's bad faith. But the instances in which Zeigon opines Allstate to have acted objectively unreasonably each are belied by other evidence. First, Zeigon opines that Allstate acted in bad faith by failing to respond to Plaintiffs within 30 days of receiving their UIM claim,[52] but Allstate clearly *did* respond within that period.[53] Second, Zeigon opines that Allstate was objectively unreasonable when it failed to send a written denial of Plaintiffs' UIM claim.[54] But, again, the evidence unequivocally shows that Allstate *did* send such a letter. The claim diary even contains a copy of its contents.[55] Third, Zeigon opines that Allstate acted objectively unreasonably by failing to secure all of Plaintiffs' medical records and failing to have a physician examine Plaintiffs independently.[56] But Allstate apparently *did* secure all of Plaintiffs' medical records,[57] and Zeigon does not explain how it was objectively unreasonable for Allstate not to arrange for an independent medical review of Plaintiffs' records. For similar reasons, Zeigon's other opinions also fail to set forth specific facts showing genuine issues for trial regarding Allstate's bad faith. Thus, the Court concludes that Zeigon's declaration fails to rebut Allstate's negation of Plaintiffs' bad faith tort claim.

---

[52] Docket 132-3 at 11.
[53] *See* Docket 117-27; Docket 117-28.
[54] Docket 132-3 at 11–12.
[55] Docket 117-19 at 4.
[56] Docket 132-3 at 13.
[57] *See* Docket 117-19 at 9 ("Processor: PLEASE GATHER MEDICAL RECORDS from MedPay to create MDP and virtual file.").

*Balazhi, et al. v. Allstate Prop. & Cas. Ins. Co.*     Case No. 3:19-cv-00241-JMK
Order on Defendant's Motion for Partial Summary Judgment     Page 12
Case 3:19-cv-00241-JMK   Document 159   Filed 05/16/22   Page 12 of 14

Plaintiffs also include a declaration from economist Hugh Richards in their opposition. Richards's declaration contains his calculation of Mr. Balazhi's economic damages resulting from the crash. But Plaintiffs do not explain how Richards's declaration demonstrates the existence of a genuine issue for trial. Presumably, Plaintiffs intend Richards's calculations to be evidence that Allstate's general damages estimates were objectively unreasonable. But they fail to explain how Richards's opinion demonstrates the existence of any genuine issues for trial regarding whether Allstate had a reasonable basis for its conclusions regarding Plaintiffs' general damages.

Accordingly, the Court concludes that Plaintiffs have not set forth specific facts showing the existence of a genuine issue for trial. Because Allstate has negated the essential elements of Plaintiffs' bad faith claim, Plaintiffs' failure to do so means that Allstate "wins the motion."[58]

## IV. CONCLUSION

Through the evidence it has offered, Allstate has demonstrated that it had a reasonable basis for the complained-of actions it took in its handling of Plaintiffs' UIM claim. In so doing, Allstate has negated the essential element of Plaintiffs' bad faith tort claim. Because Plaintiffs have not set forth any specific facts showing the existence of a genuine issue for trial. Consequently, the Court concludes that Allstate is entitled to partial summary judgment on the issue of bad faith tort liability regarding its handling of Plaintiffs' UIM claim prior to the filing of this suit.

---

[58] *Nissan Fire*, 210 F.3d at 1103.

*Balazhi, et al. v. Allstate Prop. & Cas. Ins. Co.* Case No. 3:19-cv-00241-JMK
Order on Defendant's Motion for Partial Summary Judgment Page 13
Case 3:19-cv-00241-JMK   Document 159   Filed 05/16/22   Page 13 of 14

For these reasons, Defendant's Motion for Partial Summary Judgment at Docket 117 is GRANTED. Defendant's Motion to Supplement Motion for Partial Summary Judgment at Docket 128 also is GRANTED.

IT IS SO ORDERED this 16th day of May, 2022, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge

*Balazhi, et al. v. Allstate Prop. & Cas. Ins. Co.*     Case No. 3:19-cv-00241-JMK
Order on Defendant's Motion for Partial Summary Judgment     Page 14
Case 3:19-cv-00241-JMK   Document 159   Filed 05/16/22   Page 14 of 14