IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LJUMNIE BALAZHI and SHAZIMAN BALAZHI, for himself and on behalf of his Minor Child, A.B., <br><br> Plaintiffs, <br><br> v. <br><br> ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, <br><br> Defendant. | Case No. 3:19-cv-00241-JMK <br><br> **ORDER ON PLAINTIFFS' FIRST, SECOND, AND THIRD MOTIONS *IN LIMINE* (DOCKETS 133, 138, 139)** |

This matter comes before the Court on three motions *in limine* filed by Plaintiffs at Dockets 133, 138, and 139. Defendant responded in opposition at Dockets 141, 142, and 143, and Plaintiffs replied at Dockets 141, 147, and 148. The parties did not request oral argument, nor was it was necessary to the Court's decision. For the reasons described herein, the Court will deny Plaintiffs' motions.

# I. LEGAL STANDARD[1]

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony in federal civil litigation. The rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

District court judges must act as "gatekeepers" to ensure that any expert testimony introduced "both rests on a reliable foundation and is relevant to the task at hand."[2] This requirement applies not only to "scientific" testimony, but also to testimony based on "technical" or "other specialized" knowledge.[3] Judges "are entitled to broad discretion when discharging their gatekeeping function," and "must . . . be given broad discretion to decide whether to admit expert testimony."[4] "It is the proponent of the expert

---

[1] A summary of the background facts in this case may be found in the Court's separate order on Defendant's Motion for Partial Summary Judgment (Docket 117), which the Court issued simultaneously with this order, filed at Docket 159.
[2] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).
[3] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).
[4] *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (emphasis removed).

*Balazhi, et al. v. Allstate Prop. & Cas. Ins. Co.*   Case No. 3:19-cv-00241-JMK
Order on Plaintiffs' First, Second, and Third Motions *in Limine*   Page 2
Case 3:19-cv-00241-JMK   Document 160   Filed 05/16/22   Page 2 of 10

who has the burden of proving admissibility."[5]

"Rule 702 'contemplates a broad conception of expert qualifications.'"[6] The rule "is broadly phrased and is intended to embrace more than a narrow definition of qualified expert."[7] District court judges are "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable."[8] Ultimately, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."[9]

## II. DISCUSSION

### A. Plaintiffs' First Motion

Plaintiffs' first motion *in limine* moves to exclude the expert testimony of Roger Holmes. Plaintiffs assert that Holmes is not qualified to testify as an expert witness because he is an insurance lawyer who "has no experience as a licensed insurance adjuster." Plaintiffs assert that Holmes provides no authority for his deposition testimony regarding "an insurer's duties or the industry standard of care" in handling claims. Arguing that Holmes does not meet the *Daubert* standard for the reliability of expert witnesses, Plaintiffs move to exclude Holmes' testimony.[10]

---

[5] *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007) (quoting *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996)).
[6] *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) (emphasis removed) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)).
[7] *Id.*
[8] *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (quoting *Alaska Rent-A-Car, Inc. v. Avis Budget Grp.*, 738 F.3d 960, 969 (9th Cir. 2013)).
[9] *Id.* (quoting *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010)).
[10] Docket 133 at 1–6.

*Balazhi, et al. v. Allstate Prop. & Cas. Ins. Co.*      Case No. 3:19-cv-00241-JMK
Order on Plaintiffs' First, Second, and Third Motions *in Limine*      Page 3
Case 3:19-cv-00241-JMK    Document 160    Filed 05/16/22    Page 3 of 10

Allstate responds that Holmes is qualified to be an expert witness in this case because of his long experience in the insurance industry, even though he "never held the title of 'claims adjuster' or 'employee' of an insurance company." Allstate argues that Holmes's experience, combined with his involvement in "well over two thousand serious personal injury claims" and experience as an independent arbitrator for "as many as 30 or 40 arbitrations," makes him "highly qualified, if not actually *more* qualified than an insurance adjuster[,] to offer opinions on the value of the plaintiffs' claims."[11]

When parties have sought to call insurance lawyers as expert witnesses in insurance cases, district courts usually have focused on whether the lawyers had substantial experience in the insurance industry beyond merely representing insurers and policyholders.[12] In one recent case involving allegations of bad faith against an insurance company, a district court refused to qualify a lawyer as an expert because, although he had 36 years' experience advising insurers, he never had represented one in a bad faith suit, never presented on insurer bad faith at a seminar or conference or published an article on the subject, and never had adjusted claims or worked directly for an insurance company.[13] In another recent insurer bad faith case, however, the court qualified a lawyer as an expert

---

[11] Docket 141 at 1–7.
[12] *E.g.*, *Butler v. First Acceptance Ins. Co.*, 652 F. Supp. 2d 1264, 1272 (N.D. Ga. 2009); *McGee v. Zurich Am. Ins. Co.*, No. CV-17-04024-PHX-DGC, 2021 WL 6070590 at *5–6 (D. Ariz. Dec. 22, 2021); *Lopez v. Allstate Fire & Cas. Ins. Co.*, No. 14-20654-Civ-Cooke, 2015 WL 5584898 at *5 (S.D. Fla. Sept. 23, 2015); *Tactical Stop-Loss LLC v. Travelers Cas. & Sur. Co. of Am.*, No. 08-09620-CV-W-FJG, 2010 WL 427779 at *4 (W.D. Mo. Feb. 2, 2010); *Novak v. Progressive Halcyon Ins. Co.*, No. Civ. A. 04-0632, 2005 WL 5989782 at *3 (M.D. Pa. Sept. 13, 2005).
[13] *Lopez*, 2015 WL 5584898 at *5.

*Balazhi, et al. v. Allstate Prop. & Cas. Ins. Co.*     Case No. 3:19-cv-00241-JMK
Order on Plaintiffs' First, Second, and Third Motions *in Limine*     Page 4
Case 3:19-cv-00241-JMK   Document 160   Filed 05/16/22   Page 4 of 10

because the lawyer personally had worked as a claims adjuster, albeit on a fill-in basis earlier in his career, and had supervised other claims adjusters.[14]

Holmes's situation is more like those of the insurance lawyers whom courts have qualified than those they have excluded. Although he never held the title of "claims adjuster," Holmes was the general counsel and corporate secretary of the Medical Indemnity Insurance Corporation of Alaska from 1975 to 1992.[15] In that role, he wrote the company's insurance policies and claims procedures, and hired and trained its claims adjusters.[16] Additionally, Holmes has served as an expert witness on insurer bad faith on at least three occasions, and he has been an independent arbitrator in approximately thirty or forty underinsured motorist claim disputes.[17]

In the Court's view, Holmes's experience satisfies Rule 702's threshold requirement for reliability. His background indicates that his expert testimony on insurer bad faith will have the requisite "reliable basis in the knowledge and experience of the relevant discipline."[18] Any shortcomings in his qualifications, such as the fact that he never held the title of "claims adjuster," are best addressed by vigorous cross-examination at trial, not by exclusion. Because his testimony also meets the criteria for relevance,[19] the Court will deny Plaintiffs' motion to exclude Holmes as an expert witness.

---

[14] *McGee*, 2021 WL 6070590 at *5–6.
[15] Docket 141-1 at 4–6.
[16] Docket 141-1 at 4–5.
[17] Docket 141-1 at 2–3.
[18] *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1197 (9th Cir. 2014) (quoting *Kumho Tire*, 526 U.S. at 149).
[19] Regarding the admissibility of a proposed expert witness's testimony, "[t]he relevancy bar is low, demanding only that the evidence 'logically advances a material aspect of the proposing

*Balazhi, et al. v. Allstate Prop. & Cas. Ins. Co.*  Case No. 3:19-cv-00241-JMK
Order on Plaintiffs' First, Second, and Third Motions *in Limine*  Page 5
Case 3:19-cv-00241-JMK   Document 160   Filed 05/16/22   Page 5 of 10

## B. Plaintiffs' Second Motion

Plaintiffs' second motion *in limine* moves to strike the expert report of Hayes & Associates and to exclude the expert testimony of Erik Power. Plaintiffs assert that Allstate did not timely disclose Power as an expert witness. Plaintiffs assert that Defendant's untimely disclosure of Power prejudiced their ability to research his background and determine if they needed supplemental witnesses.[20]

Allstate opposes striking the Hayes expert report and excluding Power's expert testimony. First, Allstate asserts that there is no basis for striking the Hayes expert report because Power is an employee of Hayes & Associates, which Allstate had listed in its expert witness identification. Allstate says that Power signed the report merely because he had "contributed to portions of [it]." Second, Allstate asserts that because Plaintiffs chose to take Power's deposition, "they have waived any objection to Mr. Power testifying at trial because they can no longer legitimately claim prejudice. Moreover, they have turned him into a witness of record in this matter." Allstate argues that even if the Court excludes Power from testifying at trial, it should be allowed to submit his deposition testimony to the jury.[21]

The Court sees no basis to strike Hayes's report or exclude Power as a witness under Rule 37(c). Rule 26(a)(2) requires parties to disclose "the identity of any

---

party's case.'" *Id.* at 1196 (quoting *Daubert v. Merrell Dow Pharms., Inc. (Daubert II)*, 43 F.3d 1311, 1315 (9th Cir. 1995)).
[20] Docket 138 at 1–4.
[21] Docket 143 at 1–3.

*Balazhi, et al. v. Allstate Prop. & Cas. Ins. Co.*   Case No. 3:19-cv-00241-JMK
Order on Plaintiffs' First, Second, and Third Motions *in Limine*   Page 6
Case 3:19-cv-00241-JMK   Document 160   Filed 05/16/22   Page 6 of 10

[expert] witness it may use at trial."[22] Rule 37(c)(1) provides if a party fails to identify a witness or provide information as Rule 26(a) requires, the standard remedy is that "the party is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless." Allstate has indicated to the Court that it does not intend to call Power as a witness at trial.[23] Thus, Rule 26(a)(2)(A) did not require Allstate to disclose Power as an expert witness, and Allstate did not violate the rule by not disclosing Power's identity before the disclosure deadline. Accordingly, the Court needs not exclude Power from testifying at trial.

Nor does the Court need to strike Hayes's report. Rule 26(a)(2)(B) requires reports submitted under it to be "prepared and signed by the witness." Power is one of Hayes's employees. He merely contributed to Hayes's report and appears to have signed it out of an abundance of caution. The Court sees no indication that Hayes's report inaccurately reflects the opinions he will express at trial and the facts and data upon which he relied. Accordingly, the Court will deny Plaintiffs' second motion in *limine*.

C.  **Plaintiffs' Third Motion**

Plaintiffs' third motion *in limine* seeks to strike the deposition testimony and expert reports of forensic psychologist Mark Zelig and neuropsychologist Paul Craig for lack of reliability. First, Plaintiffs assert that the psychological tests Zelig and Craig

---

[22] Fed. R. Civ. P. 26(a)(2)(A).
[23] Docket 143 at 3. In its opposition memorandum, Allstate asserts that Plaintiffs waived any objection to Power testifying at trial and turned him into a "witness of record" when they took his deposition, although they provide no authority for this proposition. Because the parties' trial witness lists and deposition designations are not yet due, the Court declines to address this issue at present.

*Balazhi, et al. v. Allstate Prop. & Cas. Ins. Co.*     Case No. 3:19-cv-00241-JMK
Order on Plaintiffs' First, Second, and Third Motions in Limine     Page 7
Case 3:19-cv-00241-JMK   Document 160   Filed 05/16/22   Page 7 of 10

performed on Mr. Balazhi are not reliable because Zelig and Craig "fail[ed] . . . to ascertain [Mr.] Balazhi's proficiency in the English language prior to the administration of standardized psychological testing in the English language," and because Zelig and Craig "injected the examiner's interpretation of the question and examiner bias" into their testing when they had to explain the test questions to Mr. Balazhi. Additionally, Plaintiffs assert that the psychological tests Zelig performed on A.B. are not reliable because Zelig "caused great upset to [A.B.] during a testing session when he startled [A.B.] by dropping a stack of books to the floor, so upsetting [A.B.] that he asked to be allowed to leave testing to compose himself." According to Plaintiffs, "Dr. Zelig then compounded the upset he created by following [A.B.] into the bathroom, which further upset [A.B.] and impacted his ability to interact and respond to Dr. Zelig, who he believed dropped the materials on purpose. Furthermore, [A.B.] believed it was inappropriate for Dr. Zelig to have followed him into the bathroom such that he felt violated by his presence . . . ."[24]

Allstate maintains that Zelig's and Craig's tests are reliable and should be admitted. Regarding Mr. Balazhi's tests, Allstate points out that the Court found that Mr. Balazhi did not need an interpreter for his Rule 35 mental examination in its order at Docket 71. Allstate additionally asserts that Zelig and Craig sufficiently considered Mr. Balazhi's proficiency in English, noting that Craig's report specifically considered culture and linguistics in its interpretation of Mr. Balazhi's test results.[25] Regarding A.B.'s tests, Allstate maintains that Zelig "adhered to all appropriate testing standards" and

---

[24] Docket 139 at 1–2.
[25] Docket 142 at 2–6.

*Balazhi, et al. v. Allstate Prop. & Cas. Ins. Co.*     Case No. 3:19-cv-00241-JMK
Order on Plaintiffs' First, Second, and Third Motions *in Limine*     Page 8
Case 3:19-cv-00241-JMK  Document 160  Filed 05/16/22  Page 8 of 10

"conducted the examinations with regard for [A.B.]'s safety and security." Allstate says that the stack of books falling from Zelig's desk was an accident that "startled Dr. Zelig as much as it startled [A.B.]," and that when Zelig followed [A.B.] into the bathroom "it was not an invasion of privacy; it was an act of concern." Allstate concludes that none of the issues with Zelig's testing of [A.B.] affect the reliability of his test results, and that any faults with Zelig's testing can be addressed by cross-examination at trial.[26]

The Court concludes that Zelig's and Craig's reports are sufficiently reliable for admission. First, any questions about the influence of Mr. Balazhi potentially misunderstanding the English-language testing do not rise to the level of requiring exclusion. In ruling on Allstate's motion for a Rule 35 mental examination, the Court concluded that Mr. Balazhi was sufficiently proficient in English to not require an interpreter.[27] And Plaintiffs provide no supporting evidence for their assertion that Zelig and Craig did not account for Mr. Balazhi's cultural and linguistic background. Consequently, the Court concludes that Zelig's and Craig's testing of Mr. Balazhi meet the threshold requirements for reliability and may be admitted.

Next, the Court concludes that the issues surrounding the reports of Zelig's testing of A.B. do not rise to the level of exclusion, either. Although Allstate provides no support for its assertions that Zelig's actions were innocuous, the Court concludes that the issues Plaintiffs raise do not lower Zelig's report below the threshold of reliability, and are

---

[26] Docket 142 at 6–9.
[27] Docket 71 at 4–5.

*Balazhi, et al. v. Allstate Prop. & Cas. Ins. Co.*  Case No. 3:19-cv-00241-JMK
Order on Plaintiffs' First, Second, and Third Motions *in Limine*  Page 9
Case 3:19-cv-00241-JMK   Document 160   Filed 05/16/22   Page 9 of 10

best dealt with through cross-examination at trial, not exclusion. For these reasons, the Court will deny Plaintiffs' third motion *in limine*.

## III. CONCLUSION

For the reasons described in this order, Plaintiffs' First, Second, and Third Motions *In Limine* at Dockets 133, 138, and 139 each are DENIED.

IT IS SO ORDERED this 16th day of May, 2022, at Anchorage, Alaska.

                                          */s/ Joshua M. Kindred*
                                          JOSHUA M. KINDRED
                                          United States District Judge

*Balazhi, et al. v. Allstate Prop. & Cas. Ins. Co.*                            Case No. 3:19-cv-00241-JMK
Order on Plaintiffs' First, Second, and Third Motions *in Limine*           Page 10
Case 3:19-cv-00241-JMK    Document 160    Filed 05/16/22    Page 10 of 10